# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## Case No. 16-20448-CIV-GAYLES/OTAZO-REYES

ARCPE 1, LLC,

     Plaintiff,

v.

NATIONSTAR MORTGAGE, LLC,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendant Nationstar Mortgage, LLC's ("Defendant" or "Nationstar") Motion for Summary Judgment [D.E. 63]. This matter was referred to the undersigned by the Honorable Darrin P. Gayles, United States District Judge, pursuant to Title 28, United States Code, Section 636 [D.E. 84]. The undersigned held a hearing on this matter on May 18, 2017 [D.E. 89]. Having heard the arguments of counsel and having considered the record and the applicable law, the undersigned respectfully recommends that the Motion for Summary Judgment be GRANTED.

## PROCEDURAL AND FACTUAL BACKGROUND

In this action, Plaintiff ARCPE 1, LLC ("Plaintiff" or "ARCPE") brings a single claim against Nationstar for conversion of a Note and Mortgage. See Am. Comp. [D.E. 15]. ARCPE alleges the following facts in support of its conversion claim:

- On March 21, 2003, James F. Higginbotham and Sherry L. Higginbotham ("the Higginbothams") executed and delivered the Note to Homecomings Financial Network, Inc. ("Homecomings") in the principal amount of $306,000.

- On the same date, the Higginbothams executed and delivered the Mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Homecomings.

- The Mortgage secured the amounts due under the Note and encumbered certain real property ("Property") located in Manatee County, Florida, which was owned by the Higginbothams.

- The Mortgage was recorded in the Public Records of Manatee County, Florida.

- The Mortgage was assigned to GMAC Mortgage, LLC in 2007 and to Nationstar in 2010. Both assignments were recorded in the Public Records of Manatee County, Florida.

- On August 9, 2011, Nationstar assigned the Mortgage to Roundpoint Mortgage Servicing Corporation ("Roundpoint"). The assignment was recorded in the Public Records of Manatee County, Florida.

- On August 9, 2013, Nationstar filed an action to foreclose on the Mortgage. After a foreclosure sale, a Certificate of Title to the Property was issued to the Federal National Mortgage Association ("Fannie Mae").

- On May 2, 2014, the Certificate of Title to the Property was recorded in the Public Records of Manatee County, Florida.

- On May 19, 2015, Fannie Mae sold the Property to Susan R. Grainger and Wesley R. Grainger ("the Graingers").

- On August 11, 2015, ARCPE purchased the Note and Mortgage from Roundpoint. Roundpoint executed an Allonge to Note, endorsing the Note to ARCPE. Roundpoint executed an Assignment of Mortgage and Other Loan Documents to ARCPE, assigning all rights, title and interest in the Note and Mortgage to ARCPE.

Id. Based on these alleged facts, ARCPE claims that Nationstar did not own the Note and Mortgage and did not have the right to bring the foreclosure action in August 2013. Id. ARCPE seeks to recover damages in an unspecified amount, plus interest and costs. Id.

Nationstar seeks summary judgment on ARCPE's conversion claim on the grounds that ARCPE did not have a right to possess the Note and did not demand its return. See Motion for Summary Judgment [D.E. 63 at 6-7]. As shown above, there is no allegation that Nationstar endorsed the Note to Roundpoint; ARCPE only alleges that Nationstar assigned the Mortgage to Roundpoint in August 2011. ARCPE responds that, even if the Note was not endorsed to Roundpoint, ARCPE still has a viable claim for conversion of the Mortgage. See Plaintiff's

Response to Motion for Summary Judgment [D.E. 65 at 8-9]. ARCPE also argues that it is a bona fide purchaser ("BFP") of the Mortgage as a result of the Assignment to Roundpoint being recorded in the public records. Id. at 11-13. Thus, ARCPE's conversion claim against Nationstar is limited to the Mortgage and is wholly predicated on its alleged BFP status. Finding no basis in law or fact for this narrowed conversion claim, the undersigned respectfully recommends that Nationstar's Motion for Summary Judgment be GRANTED.

## APPLICABLE LAW

I.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, courts "view all evidence and draw all reasonable inferences in favor of the non-moving party." Smith v. Royal Caribbean Cruises, Ltd., 620 F. App'x 727, 729 (11th Cir. 2015). "Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; 'the requirement is that there be no *genuine* issue of *material* fact.'" Weiner v. Carnival Cruise Lines, No. 11-CV-22516, 2012 WL 5199604, at *2 (S.D. Fla. Oct. 22, 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Indeed,

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Cohen v. Carnival Corp., 945 F. Supp. 2d 1351, 1354 (S.D. Fla. 2013) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). Hence, the mere existence of a scintilla of evidence in

support of the non-moving party's position is insufficient; there must be evidence upon which a jury could reasonably find for the non-movant. Anderson, 477 U.S. at 251.

II.      Conversion Claim

"A conversion occurs when a person who has a right to possession of property demands its return and the demand is not or cannot be met." Ginsberg v. Lennar Fla. Holdings, Inc., 645 So. 2d 490, 500 (Fla. 3d DCA 1994) (quoting Shelby Mut. Ins. v. Crain Press, 481 So. 2d 501, 503 (Fla. 2d DCA 1985)). "However a demand and refusal are unnecessary w[h]ere it would be futile and the act preventing a return results in a depriving of possession and, thus equates to a conversion." Id.

III.      Relationship Between Note and Mortgage

"A mortgage is the security for the payment of the negotiable promissory note." Cleveland v. Crown Fin., LLC, 183 So. 3d 1206, 1209 (Fla. 1st DCA 2016). "A promissory note is not a mortgage." Id. Further,

> The promise to pay is one distinct agreement, and, if couched in proper terms is negotiable. The pledge of real estate to secure that promise is another distinct agreement, which ordinarily is not intended to affect in the least the promise to pay, but only to give a remedy for failure to carry out the promise to pay. The holder of the note may discard the mortgage entirely, and sue and recover on the note.

Id. at 1210.

"[A] mortgage—as a mere incident to the debt it secures—follows the note *unless* the parties have clearly expressed a contrary intent." Taylor v. Bayview Loan Servicing, LLC, 74 So. 3d 1115, 1118 (Fla. 2d DCA 2011). Thus, "an assignment of the mortgage without an assignment of the debt creates no right in the assignee." Tilus v. AS Michai LLC, 161 So. 3d 1284, 1286 (Fla. 4th DCA 2015).

IV.    Bona Fide Purchaser

"[T]o be a bona fide purchaser three conditions must be satisfied: the purchaser must have (1) acquired the legal title to the property in question; (2) he must have paid value therefor; and (3) he must have been innocent of knowledge of the equity against the property at the time when he paid his value and acquired his title." Demonsthenes v. Girard, 955 So. 2d 1189, 1192 (Fla. 3d DCA 2007).

## UNDISPUTED MATERIAL FACTS[1]

1.    The Higginbothams obtained a $306,000 loan on March 21, 2003 (hereafter, "Loan # 1").

2.    The Higginbothams modified their loan terms on March 14, 2009.

3.    The Higginbothams stopped making loan payments in May 2009.

4.    Nationstar foreclosed on August 9, 2013. The complaint alleged that Fannie Mae was the loan owner and that Nationstar was the loan servicer and authorized party to foreclose.

5.    The complaint named junior lienholders, including a $215,000 mortgage in favor of Private Lender Services, Corp. ("Private Lender").

6.    The state court granted final judgment in favor of Nationstar on March 11, 2014.

7.    Nationstar assigned its judgment credit bid to Fannie Mae. A certificate of title was issued to Fannie Mae on May 2, 2014.

---

[1] See Nationstar's Statement of Undisputed Material Facts [D.E. 62]; Plaintiff's Response to Defendant's Statement of Undisputed Facts [D.E. 66]; Statement of Disputed Material Facts in Response to Additional Facts Raised by Defendants in Opposition to Summary Judgment [D.E. 74]. Several of the Additional Facts set forth in Plaintiff's Response to Defendant's Statement of Undisputed Facts are derived from the affidavit of Barry Brecher, which Nationstar argues should be disregarded as a "sham" affidavit on the basis that it contradicts the prior deposition testimony of ARCPE's corporate representative. See Nationstar's Reply Supporting Motion for Summary Judgment [D.E. 73 at 4]. Finding that the affidavit supplements rather than contradicts the deposition testimony, the undersigned does not deem it to be a sham affidavit.

8.     After taking title to the property post-foreclosure, Fannie Mae sold it to a third party on May 19, 2015.

9.     Fannie Mae owned the $306,000 loan (Loan # 1).[2]

10.    Fannie Mae did not sell the $306,000 loan (Loan # 1).[3]

11.    The Higginbothams obtained a $215,000 second mortgage loan designated in the loan documents as a "wraparound" mortgage on August 16, 2006 in favor of Private Lender (hereafter, "Loan # 2"). It secured a $510,000 promissory note.[4]

12.    The Wrap Around Mortgage Rider provides, in key part:

### WRAP AROUND MORTGAGE RIDER

This Rider is executed this 16th day of August, 2006 and is incorporated into that certain mortgage dated August 16, 2006 (the "Mortgage") executed by James Higginbotham and Sherry Higginbotham (the "Mortgagor") in favor of Private Lender Services, Corp. (the "Mortgagee") securing a promissory note in the amount of $510,000.00 (the "Note"). Mortgagor and Mortgagee agree as follows:

1. The mortgage is subordinate and inferior to that certain mortgage dated March 21, 2003 (the "Primary Mortgage"), in favor of Mortgage Electronic Registrations Systems, Inc. as Nominee for Homecomings Financial Network, Inc...., securing a note of even date (the "Primary Note") in the original principal amount of $306,000.00...

13.    Roundpoint was the owner of Loan No. 2216.

---

[2] ARCPE disputes this fact but provides no factual support for doing so. Therefore, the undersigned deems this fact to be undisputed.

[3] ARCPE disputes this fact but provides no factual support for doing so. Therefore, the undersigned deems this fact to be undisputed.

[4] ARCPE disputes that this was a "wraparound" mortgage but provides no factual support for doing so. Moreover, ARCPE's purported dispute contradicts the fact that the loan is expressly designated as a "wraparound" mortgage in the loan documents. See Undisputed Fact No. 12, *infra*. Therefore, the undersigned deems the "wraparound" mortgage designation to be undisputed.

14.    Roundpoint purchased Loan No. 2216.[5]

15.    It is the routine practice of Roundpoint to maintain a copy of a promissory note for each loan in its system.

16.    The note in Roundpoint's system associated with Loan No. 2216 is the $510,000 note dated August 16, 2006.

17.    The mortgage in Roundpoint's system associated with Loan No. 2216 is the $215,000 mortgage dated August 16, 2006.

18.    The "wraparound" mortgage rider confirms the mortgage in Roundpoint's system secures the $510,000 promissory note.

19.    Loan No. 2216 is subordinate and inferior to the Fannie Mae loan (Loan # 1).

20.    Roundpoint knew Nationstar filed a foreclosure—it was served.  Prior to the entry of judgment, it did not assert an interest in the $306,000 Note and Mortgage Nationstar was foreclosing.

21.    After Nationstar obtained a final judgment in the foreclosure, Roundpoint instructed its counsel to object to the sale but did not take any other actions.

22.    Roundpoint sold Loan No. 2216 to ARCPE.[6]

23.    The loan purchase and sale agreement between ARCPE and Roundpoint references Loan No. 2216.[7]

24.    This fact is disputed.

---

[5] ARCPE states that this is a disputed fact because it appears that Roundpoint was the servicer of Loan No. 2216 with attendant legal right to service and sell the loan.  These are additional facts rather than a dispute of the fact that Roundpoint purchased the loan.

[6] ARCPE disputes this fact but provides no factual support for doing so.  Therefore, the undersigned deems this fact to be undisputed.

[7] According to ARCPE, the loan purchase and sale agreement also states that the loans being purchased are all first priority liens and REO's ("Real Estate Owned").  The actual language in the transaction between Roundpoint and ARCPE references the sale of "first lien mortgage loans and REO properties." See D.E. 58-4 at 1.

25.     This fact is disputed.

26.     This fact is disputed.

27.     Roundpoint never serviced the Fannie Mae loan (Loan # 1).[8]

28.     Roundpoint does not have a copy of the $306,000 Note in its system.

29.     Roundpoint has nothing in its system that shows a purchase and sale of any Higginbotham loan between Roundpoint and Nationstar.[9]

30.     Roundpoint has nothing in its system that shows a purchase and sale of any Higginbotham loan between Roundpoint and Fannie Mae.[10]

31.     Roundpoint has no evidence in its system that it paid Nationstar consideration for a loan purchase.[11]

32.     If there had been a deal between Roundpoint and Nationstar whereby Roundpoint acquired a loan from Nationstar, there would be a record of that in Roundpoint's system.[12]

33.     The purchase and sale agreement between ARCPE and Roundpoint does not reference the loan ARCPE claims Nationstar converted; i.e. the $306,000 Note dated March 21, 2003.[13]

---

[8] ARCPE disputes this fact on the grounds that Roundpoint made protective advances with regard to the Property, including 2010, 2011, 2012 and 2013 taxes as well as property insurance. However, ARCPE has proffered no evidence that Roundpoint serviced Loan #1 and does not dispute that Nationstar was the loan servicer. See Undisputed Fact No. 4, *supra*.

[9] Roundpoint disputes this fact by referring to the Assignment of Mortgage from Nationstar to Roundpoint. However, such assignment is not a loan purchase and sale document.

[10] Roundpoint disputes this fact by referring to the Assignment of Mortgage from Nationstar to Roundpoint. However, such assignment is not a loan purchase and sale document.

[11] Roundpoint disputes this fact by referring to language in the Assignment of Mortgage from Nationstar to Roundpoint, which recites that the assignment was in exchange for good and valuable consideration. However, such assignment is not a loan purchase document.

[12] Roundpoint disputes this fact by referring to the Assignment of Mortgage from Nationstar to Roundpoint. However, such assignment is not a loan purchase document.

[13] Roundpoint disputes this fact on the grounds that: the loan purchase and sale agreement states that only first position mortgages are being sold; that Roundpoint's internal documents reflected that the loan sold to ARCPE was a first mortgage; and that Roundpoint did not have an assignment of the second mortgage

34.     There is no evidence that ARCPE purchased the allegedly converted $306,000 Note from Roundpoint as part of the purchase and sale agreement.[14]

35.     At no point in time did ARCPE demand the $306,000 promissory Note from Nationstar.

36.     This fact is disputed.

37.     This fact is disputed.

38.     ARCPE contracted to buy first position liens from Roundpoint.

39.     ARCPE made an informal demand for Roundpoint to repurchase the loan pursuant to the purchase and sale agreement.

40.     Nationstar executed the Assignment of Mortgage to Roundpoint on August 19, 2011.

41.     This fact is disputed.

42.     This fact is disputed.

43.     This fact is disputed.

44.     This fact is disputed.

---

in its file. However, none of these grounds dispute that there was no reference to the $306,000 Note in the loan and purchase agreement between ARCPE and Roundpoint.

[14] Roundpoint disputes this fact on the grounds that: Roundpoint had the Assignment of Mortgage from Nationstar to Roundpoint; Roundpoint's internal documents state that the Higginbotham loan was a first mortgage; the purchase and sale agreement states that only first position mortgages were being sold; Roundpoint gave an Assignment of First Mortgage and Allonge (assignment) of the $306,000 Note to ARCPE; ARCPE purchased the $306,000 Note and First Mortgage from Round Point; Roundpoint believed that it owned and held a "1st Mortgage;" and Roundpoint told ARCPE that it was purchasing the $306,000 Note and a First Mortgage. However, none of these grounds are evidence that ARCPE purchased the $306,000 Note from Roundpoint. Indeed, ARCPE does not allege that either Nationstar or Fannie Mae endorsed the $306,000 Note to Roundpoint to dispute the lack of evidence that ARCPE purchased the $306,000 Note from Roundpoint.

45.    On March 21, 2003, the Higginbothams executed and delivered a Mortgage ("Mortgage") to MERS as nominee for Homecomings, which was recorded in Official Records Book 1814, Page 4814, of the Public Records of Manatee County, Florida.

46.    On or about November 19, 2007, MERS assigned the Mortgage to GMAC Mortgage, LLC, which assignment was recorded on November 26, 2007 in Official Records Book 2236, Page 3731, of the Public Records of Manatee County, Florida. The assignment was an absolute assignment.

47.    On or about May 20, 2010, GMAC Mortgage, LLC executed an Assignment of Mortgage to Nationstar, which was recorded on July 2, 2010 in Official Records Book 2344, Page 3172, of the Public Records of Manatee County, Florida.

48.    Nationstar received a request that was recorded on August 19, 2011 at 1:17 p.m., for an assignment of mortgage from Roundpoint.

49.    Nationstar's internal servicing notes reflect that less than three hours after getting the request for the Assignment, Nationstar executed the Assignment and sent it to Roundpoint by Federal Express.

50.    The Assignment was recorded on September 23, 2011 in Official Records Book 2392, Page 7814, of the Public Records of Manatee County, Florida.

51.    This fact is disputed.

52.    This fact is disputed.

53.    Nationstar has the authority to execute assignments of mortgage on behalf of Fannie Mae. More specifically, Nationstar had the authority to execute the Assignment of the Higginbotham Mortgage.

54. On April 4, 2012, Nationstar executed an affidavit swearing under oath that the $306,000 Note was lost or destroyed.

55. On September 5, 2013, the Higginbothams filed a letter in the Foreclosure Action. Therein, the Higginbothams advised the court that "there is a dispute on [sic] as to which company owns the mortgage and where the original note and mortgage is [sic]." The letter goes on to state that they "get calls from Roundpoint saying we owe them and not Nationstar."

56. On May 2, 2014, the Clerk of the Circuit Court for Manatee County issued a Certificate of Title for the Property to Fannie Mae, which was recorded on May 5, 2014 in Official Records Book 2519, Page 2892, of the Public Records of Manatee County, Florida.

57. On or about May 19, 2015, Fannie Mae sold the Property to the Graingers.

58. ARCPE purchases loans that are performing, non-performing, in foreclosure and sometimes already converted to REO.

59. ARCPE and its related companies have purchased thousands of loans.

60. This fact is disputed.

61. Roundpoint executed an Allonge endorsing the $306,000 Note to ARCPE.[15]

62. Roundpoint executed an Assignment of Mortgage and Other Loan Documents relating to the Property to ARCPE.[16]

63. Barry Brecher ("Brecher") was the person from ARCPE primarily responsible for the due diligence regarding the Roundpoint purchase.[17]

---

[15] Nationstar disputes this fact on the basis that David Gordon ("Gordon"), the signatory of the Allonge was an employee of ARCPE. However, Gordon signed the Allonge on behalf of Roundpoint as its "Attorney in Fact" [D.E. 15-7].

[16] Nationstar disputes this fact on the basis that Gordon, the signatory of the Assignment of Mortgage and Other Loan Documents was an employee of ARCPE. However, Gordon signed the Assignment of Mortgage and Other Loan Documents on behalf of Roundpoint as its "Attorney in Fact" [D.E. 15-8].

[17] Nationstar disputes this fact on the basis of ARCPE's corporate representative's deposition testimony. However, this fact is derived from Brecher's Affidavit.

64.     Brecher has performed due diligence on well over a thousand loans for ARCPE and its related companies.

65.     As part of the due diligence, Brecher reviewed the Assignment from Nationstar to Roundpoint.[18]

66.     Brecher delved into the matter further and determined that there was a pending foreclosure and that a foreclosure sale was imminent.[19]

67.     Brecher had a local real estate broker inspect the subject property who advised him that the subject property was abandoned.  Brecher conducted a search and determined that the utilities servicing the subject property were not turned on.[20]

68.     Roundpoint made protective advances with regard to the Property including 2010, 2011, 2012 and 2013 taxes as well as property insurance.

69.     Brecher was provided information that showed that Roundpoint had paid the property taxes and insurance on the subject property.[21]

70.     Based on his due diligence, Brecher determined that the subject property would shortly become REO.[22]

71.     As ARCPE purchases many loans in default, it is not unusual for the mortgage to be in foreclosure and for the predecessor in interest to finish the foreclosure and then deed the property to ARCPE.

---

[18] Nationstar disputes this fact on the basis of ARCPE's corporate representative's deposition testimony. However, this fact is derived from Brecher's Affidavit.

[19] Nationstar disputes this fact on the basis of ARCPE's corporate representative's deposition testimony. However, this fact is derived from Brecher's Affidavit.

[20] Nationstar disputes this fact on the basis of ARCPE's corporate representative's deposition testimony. However, this fact is derived from Brecher's Affidavit.

[21] Nationstar disputes this fact on the basis of ARCPE's corporate representative's deposition testimony. However, this fact is derived from Brecher's Affidavit.  Nevertheless, the undersigned does not adopt as undisputed the remaining statements in this paragraph because they are not facts but opinions of Brecher.

[22] Nationstar disputes this fact on the basis of ARCPE's corporate representative's deposition testimony. However, this fact is derived from Brecher's Affidavit.

72.    Brecher has been involved with loans that were, at one time, owned by Fannie Mae and in which Fannie Mae eventually obtained title. In those situations, he was able to obtain deeds from Fannie Mae. Here, as it had previously done, ARCPE planned to get a quit claim deed from Fannie Mae once it obtained title.

73.    After the closing with Roundpoint, Brecher prepared a quit claim deed for Fannie Mae to sign. While he was preparing the deed, he checked the public records and saw that Fannie Mae had sold the subject property.[23]

74.    Prior to filing the foreclosure lawsuit, Nationstar's January 18, 2012 internal servicing records state that there was a "Title Claim in process."

75.    This fact is disputed.

76.    Nationstar conducts "foreclosure reviews" of its files. Generally, Nationstar's foreclosure review process would include a review of a title search.

77.    On May 22, 2013, while conducting a "foreclosure review," Nationstar once again noted the existence of a "title issue."

78.    This fact is disputed.

79.    On June 5, 2013, Nationstar conducted another foreclosure review.

80.    On August 21, 2015, a Nationstar employee made the following notation in their servicing system: "Assignment request email processed. Escalation email from Mgr Stacey R to review AOM recorded post sale. Need review for erroneous AOM or AOM to correct chain to current LOR."

81.    This fact is disputed.

82.    Nationstar investigates a file if there is an issue as to who owns a loan.

---

[23] Nationstar disputes this fact on the basis of ARCPE's corporate representative's deposition testimony. However, this fact is derived from Brecher's Affidavit.

83.     This fact is disputed.

84.     ARCPE relied upon the Assignment from Nationstar to Roundpoint in making its decision to purchase the Higginbotham loan and would not have purchased the Higginbotham loan without the Assignment from Nationstar to Roundpoint.[24]

## DISCUSSION

The undisputed facts establish that two loans were made for the Higginbothams' Property:

> Loan # 1, for $306,000, owned by Fannie Mae, serviced by Nationstar, and secured by a "Primary Mortgage" on the Property; and

> Loan # 2, for $215,000, originally made by Private Lender, and later purchased by Roundpoint, who sold it to ARCPE, which loan was secured by a "wraparound" mortgage on the Property, which mortgage was "subordinate and inferior" to the "Primary Mortgage."

It is also undisputed that neither Fannie Mae nor Nationstar ever endorsed the $306,000 Note to Roundpoint. However, it is also undisputed that Nationstar assigned the "Primary Mortgage" to Roundpoint on August 19, 2011; and that the assignment was recorded in the public records of Manatee County, Florida on September 23, 2011.

To succeed in its conversion claim, ARCPE must have "a right to possession of property." Ginsberg, 645 So. 2d at 500. As noted above, "a mortgage—as a mere incident to the debt it secures—follows the note *unless* the parties have clearly expressed a contrary intent." Taylor, 74 So. 3d at 1118. There is no evidence of any contrary intent in this case with respect to the Primary Mortgage and the $306,000 Note. And nothing in Roundpoint's records referenced

---

[24] Nationstar disputes this fact on the basis of ARCPE's corporate representative's deposition testimony. However, this fact is derived from Brecher's Affidavit.

the loan associated with the Primary Mortgage, namely Loan # 1. Thus, the Assignment created no rights in Roundpoint with respect to the $306,000 Note. Tilus, 161 So. 3d at 1286. As a result, ARCPE can only rely on the assignment of the Primary Mortgage to Roundpoint and its own claimed status as a BFP of that Primary Mortgage for its conversion claim against Nationstar. In other words, the claimed property in this case is the Primary Mortgage; and the basis for ARCPE's asserted right of possession is the Assignment by Nationstar to Roundpoint on August 19, 2011 (recorded on September 23, 2011), together with ARCPE's claim that it acquired the Primary Mortgage as a BFP when it purchased Loan No. 2216. However, ARCPE's conversion claim is not sustainable as a matter of law.

As noted above, "to be a bona fide purchaser three conditions must be satisfied: the purchaser must have (1) acquired the legal title to the property in question; (2) he must have paid value therefor; and (3) he must have been innocent of knowledge of the equity against the property at the time when he paid his value and acquired his title." Demonsthenes, 955 So. 2d at 1192. Here, ARCPE did not acquire legal title to the Primary Mortgage when it purchased Loan No. 2216, since the mortgage associated with that loan in Roundpoint's system was the $215,000 mortgage not the Primary Mortgage, notwithstanding its Assignment to Roundpoint in 2011. Moreover, because it did not acquire the Primary Mortgage as part of the Loan No. 2216 transaction, ARCPE did not pay value for it. Finally, prior to consummating the purchase of Loan No. 2216, ARCPE had notice of the Foreclosure Action on the Primary Mortgage by Nationstar, which named Private Lender as a junior lienholder; and of an imminent foreclosure sale. Therefore, ARCPE had knowledge of Nationstar and Fannie Mae's equity in the Primary Mortgage. Thus, ARCPE does not meet the BFP requirements.

ARCPE argues that, as between it and Nationstar, the latter should bear any loss because

it knew about the Assignment to Roundpoint and did not correct it. ARCPE offers no legal authority to support this contention absent BFP status, which it cannot establish as a matter of law.

## **RECOMMENDATION**

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have <u>fourteen</u> days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. <u>See</u> <u>Resolution Tr. Corp. v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." <u>See</u> 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida this 10th day of August, 2017.

_Alicia M. Otazo-Reyes_
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE


cc:     United States District Judge Darrin P. Gayles
        Counsel of Record